IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

```
UNITED STATES OF AMERICA       :
                               :
       v.                      :  Criminal No. 3:07:cr00001
                               :
KEVIN ALFRED STROM             :
```

### UNITED STATES'S RESPONSE TO DEFENDANT'S MOTION TO SEVER COUNT ONE

Defendant in the above-captioned case has filed a "Motion for Separate Trial for Count One of Superseding Indictment" (hereinafter "Severance Motion"). In his Severance Motion, as the title implies, defendant requests that the Court sever Count One from the Superseding Indictment for a separate trial. The Superseding Indictment returned by the Court's grand jury charges defendant with seven criminal violations. Count One charges coercion and enticement in violation of Title 18, United States Code, Section 2422(b). Counts Two through Five charge defendant with separate incidents of receiving child pornography in violation of Title 18, United States Code, Sections 2252A(a)(2) and 2252A(b)(1). Count Six charges defendant with possession of child pornography in violation of Title 18, United States Code, Sections

2252A(a)(5)(B) and 2252A(b)(2). Lastly, Count Seven charges defendant with witness tampering in violation of Title 18, United States Code, Section 1512(c)(2).

Defendant's Severance Motion offers two main arguments. First, defendant claims that Count One is not sufficiently related to the other counts in the Superseding Indictment for all counts to be tried together. Severance Motion at 2-5. Second, defendant argues that trying all of the grand jury's Superseding Indictment together would substantially prejudice defendant. Id. at 5-7. Both claims lack merit. Count One is inextricably intertwined with the rest of the grand jury's Superseding Indictment, and not only are there significant efficiencies attendant to trying the counts together, but they must be tried together, as the evidence that proves Count One is relevant and material to the other counts and vice versa.

I. Facts

At some point within about September 2005 defendant became acquainted with A.A., a nine year old child. Defendant has no biological, legal, or other familial, relationship with A.A. or any member of her family. From that date until approximately December 24, 2006, defendant contacted A.A. on numerous occasions. He made attempts over this time period,

many successful, at seeing or being with A.A. For example, he frequently went to her school, on one occasion hiding behind a tree so that one of A.A.'s parents would not see him. He also drove around A.A.'s residence, which was not near his house, with no apparent reason to be in this rather isolated area of the Court's jurisdiction. In addition, when A.A. changed schools because of defendant's harassment, defendant did computer research to find out the schedule of A.A.'s day at her new school. This fact is supported by A.A.'s new school's schedule that was recovered from one of defendant's computers. The child's schedule was downloaded by defendant soon after A.A. transferred to this new school. In addition, defendant sent A.A. gifts, including, among other things, a CD, a DVD, an angora sweater, and a bouquet of roses. The roses came with a note that said, "To the kindest and finest person I have ever met. May God bless you." Defendant sent many of these gifts using a pseudonym so that A.A.'s parents would not learn of his intentions.

In addition to this, defendant's lap-top computer contained a sonnet of sorts that was penned by defendant for A.A. Some verses should give the Court an understanding of the work: "my love for her is not a sin. . . . . I'll be

showered with the kisses of [A.A.] . . . . I will marry [A.A.]" Defendant provides a note, or direction, to his work in italics indicating that it is "to be sung to the tune of 'Here We Come a-Wassailing.'" Another similar work on defendant's computer includes: "the bitch[, Witness A from Count Seven,] says that my angel was a beast and I a fiend . . . my heart ne'er takes a beat without a thought of the beautiful [A.A.] . . . till the day I can embrace you [A.A.], this life or the next one, [A.A.]" This second set of verses was updated on defendant's computer on October 16, 2006. In addition to this, there were well over 100 images of A.A. stored on defendant's computers.

About a month before these verses were modified on defendant's computer, on September 8, 2006, defendant and Witness A were engaged in an ongoing argument about defendant's pedophilia and his possession of child pornography.[1] Witness A, who was concerned about her child, who is approximately the same age as A.A., confronted

---

[1] The United States has not publically identified Witness A from Count Seven. Nevertheless, this fact may be clear from the extensive discovery that has been provided in this matter. Defendant speculated as to Witness A's identity in his motion, using her proper name publically in that motion. Severance Motion at 4. There has been no confirmation from the United States that defendant's public statement of Witness A's identity is accurate.

4

defendant about his conduct.[2] Just before this confrontation, Witness A had caught defendant while he was completely naked and sitting at his computer looking at pictures of young girls, some of whom Witness A recognized as friends of hers and defendant's. When she found him in this condition, defendant ran from her, but before he could make good his escape, she was able to observe that he was sexually aroused. This conduct, in conjunction with a number of other things that defendant had done, caused Witness A some level of concern, so she confronted him. After much discussion, defendant executed the notarized statement attached as Exhibit A. As the Court can see, in this pseudo-contract defendant agrees to seek and maintain counseling for his "concerns relating to pedophilia."

After this confrontation, defendant believed that Witness A told law enforcement officers, including federal agents, about a number of his criminal acts, including the child pornography on his computer, his sexual interest in A.A. and

---

[2] Witness A became concerned about defendant's conduct toward her daughter, and she began sleeping in front of her daughter's door to prevent defendant from entering the child's room at night. Defendant had many pictures of Witness A's daughter on his computer. In a number of these the child is posed suggestively. Defendant choreographed and took these pictures. However, these images do not meet the federal definition of child pornography.

her daughter, and his physical and psychological intimidation of Witness A.  Operating under this mistaken belief that Witness A was cooperating with law enforcement against him, defendant accelerated a campaign to intimidate and discredit her.  Over time defendant's actions toward Witness A included physical assaults, aggressive civil litigation, verbal threats, psychological intimidation, as well as other conduct. All of this intimidation was an attempt to either discredit Witness A or prevent her from reporting defendant's ongoing criminal activity including all of the actions set forth in Counts One through Seven of the Superseding Indictment.

On two of the computer memory devices recovered from defendant, there are hundreds of images of children.  Some of these pictures depict children who are clothed and in sexually suggestive positions, and others are not wearing clothes and posed in sexually suggestive positions.  The images found on these hard drives are the images charged in the attempt to possess child pornography count, Count Six.  Certain specific images from defendant's computer are charged in Counts Two through Five, which allege different instances of receipt of child pornography.  A number of the images on these two hard drives are of children A.A.'s age.  In addition, many of

defendant's sexually suggestive and pornographic images are of children with similar physical appearances as A.A.

On October 26, 2006, defendant was approached by a case worker with Greene County Social Services about defendant's conduct regarding Witness A, his interaction with A.A., and the child pornography on his computer. During this interview, defendant "acknowledged looking at nude pictures of teenaged girls on the internet and 'pleasuring himself.'" Defendant admitted to the case worker that what he did was wrong. In the words of the interview report, "[h]e said he did masturbate to the pictures[, of the teenaged girls,] but that he was only fantasizing." In a subsequent statement when he was arrested on January 4, 2007, defendant admitted that these images of child pornography would be on his computer. About the images he said that he downloaded them from the internet. He also told the agents that "sometimes I would fantasize that the girls were a little older than they were too." . . . "And, you can imagine, well it's not really as bad as it looks. She's really sixteen she's not thirteen, and so ya, I'm sure that I looked at things that I'm deeply embarrassed that I ever looked at." Defendant added about his conduct, "I don't think it was right." Defendant also admitted that he

had masturbated while looking at pictures of young girls and that Witness A had caught him doing this.

II. **Defendant's Conduct that is Charged in the Grand Jury's Superseding Indictment Must be Tried Together.**

In United States v. Jamar, 561 F.2d 1103 (4th Cir. 1977), the Fourth Circuit recognized a two part test for dealing with the flavor of joinder issue that is presented to the Court here. First, this Court must determine whether joinder was proper under Rule 8(a) of the Federal Rules of Criminal Procedure. If the answer to that question is yes, and the counts are properly joined in the same Superseding Indictment, the Court views the counts through the lens of Rule 14 to see if defendant is unfairly and unduly prejudiced by the joinder. In United States v. Acker, 52 F.3d 509, 514 (4th Cir. 1995), the Circuit approvingly quoted the Ninth Circuit as follows:

> We have held that joinder is a rule rather than the exception and that the burden is on the defendant in his appeal following denial of a motion to sever to show that joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever.

Acker, above, at 514, quoting, United States v. Armstrong, 621 F.2d 951, 954 (9th Cir. 1980). The case law makes clear that joinder is the norm and severance an extreme exception.

8

Forgery and drug counts are tried together, United States v. Mandel, 818 F.2d 862 (4th Cir. 1987) (unpublished case); tax and drug counts are tried together, United States v. Clark, 928 F.2d 639, 644-645 (4th Cir. 1991); and distinct bank robberies are tried together, Acker, above, at 513-515; to name only a few examples.

    A.   Rule 8

Federal Rule of Criminal Procedure 8(a) allows joinder of multiple counts if they are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  United States v. Quilling, 261 F.3d 707, 713-14 (7th Cir.2001).  The Eighth Circuit wrote that:

> Rule 8(a) does not require that offenses be of an identical nature before they can be joined properly; rather joinder is appropriate even if the offenses are of similar character, or constitute parts of a common scheme or plan.

United States v. Hutchings, 751 F.2d 230, 235 (8th Cir. 1984). To warrant severance, the defendant must show that the joinder created actual prejudice that would deprive him of a fair trial.  United States v. Rollins, 301 F.3d 511, 519 (7th Cir.2002).  "Prejudice requiring severance is not shown if evidence on the severed counts would be admissible in the

9

trial of the remaining counts." Id. at 519. However, the rule goes even further than this. Mutual admissibility, which, as noted below, does exist in this case, is not required for there to be a valid joinder of offenses. See Jamar, above, at 1108 n.8, citing, Baker v. United States, 401 F.2d 958, 974-975 (D.C. Cir. 1968).

    Here, the facts set forth in the Superseding Indictment satisfy the liberal joinder structure of Rule 8 because they arise out of a series of related actions, all tied to the charged conduct. Put more accurately, they all are part of the same course of conduct committed by defendant. The child pornography and obstruction charges are so intertwined with defendant's other charge, the enticement count, that without this evidence being admitted, the enticement conduct would have neither context nor foundation. The reverse is true as well. Defendant's conduct toward A.A., summarized above, is relevant as to why he was intimidating Witness A and why he downloaded and used child pornography. Therefore, the defendant is not entitled to severance under Rule 8(a), or stated more accurately in the legal context discussed above, the counts are properly joined in the Superseding Indictment.

10

B.  <u>Rule 14</u>

Defendant has also failed to establish a basis for severance under Federal Rule of Criminal Procedure 14, which allows the Court to grant a severance when a defendant's trial will be prejudiced by the joinder of other offenses or other defendants.  Rule 14(a) dictates that:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).  Under Rule 14, the Court is to balance the cost of multiple trials against the possibility of unfair prejudice that might arise from a single trial.  <u>See</u> <u>Rollins</u>, <u>above</u>, 301 F.3d at 518.  Here there is no such improper prejudice.  In this case, all of the counts returned by the grand jury are related in such a way that the evidence could not be severed, never mind the counts themselves.  In fact, not only would the evidence regarding the child pornography and obstruction counts be admissible in a trial regarding only the enticement count, and vice versa, but neither group of counts, or severed single count, may be tried alone.  For example, defendant's statements would be

11

exceptionally difficult to present to the jury in either of defendant's proposed severed trials. In addition, the information on defendant's computers, including the child photography, further demonstrates defendant's illegal interest in children generally. As noted, some of the children on defendant's computer, including the images of child pornography, depict girls of similar age and physical appearance as A.A. Lastly, a portion of the evidence against defendant is relevant to both areas of criminal conduct. For example, the contract attached as Exhibit A helps prove both that defendant was attempting to receive and attempting to possess child pornography. It also is an explicit admission of defendant's "concerns related to pedophilia." Such evidence certainly is exceptionally relevant to defendant's conduct charged in Count One. This notarized document is relevant to all seven counts in the grand jury's Superseding Indictment. Another example of such evidence is Witness A. Defendant believed that Witness A reported defendant's conduct toward A.A. as well as his child pornography on his computer and his "use" of it to the police. She is a witness to all of defendant's conduct that the grand jury has charged here. She could not explain what she saw and heard, particularly

relating to Count Seven, without describing all of defendant's ongoing acts during this time period.

It is also noteworthy that all of the conduct at issue here was occurring over the same time period. These are not distinct acts that occurred at different times like bank robberies or different incidents of forgery, both of which are almost always tried together. Unlike those two examples, the government would likely be presenting almost identical evidence at both of defendant's hypothetical trials, highlighting the inefficiencies that would occur if defendant's motion were granted. Severance in this matter would be exceptionally difficult to accomplish and would leave the evidence stilted and disjointed. This is why under the clear case law defendant is not entitled to two trials on his related actions involving these young girls.

### III. Conclusion

The conduct charged in the Superseding Indictment before the Court here is all part and parcel of defendant's criminal interest in minor children. No one part of the Superseding Indictment can be explained to a jury without the whole story being told. Defendant is correct that much of the evidence is exceptionally prejudicial; nevertheless, none of it is

unfairly prejudicial.  He committed these acts, and they are interrelated in a way that does not permit severance.  Given this, the government respectfully requests that the Court deny defendant's Severance Motion.

                                            Respectfully submitted,
                                            John L. Brownlee
                                            United States Attorney

                                            William F. Gould
                                            Assistant United States Attorney

Dated:   May 24, 2005

## C E R T I F I C A T E

I certify that a true and correct copy of this government response to defendant's Motion to Sever has been filed through the Court's electronic filing system, which will send a copy to counsel for defendant, Ms. Andrea L. Harris, Esquire, of the Office of the Federal Public Defender, on this 24th day of May, 2007.

_____
William F. Gould
Assistant United States Attorney