```
                    IN THE
          UNITED STATES DISTRICT COURT
                   FOR THE
         WESTERN DISTRICT OF VIRGINIA
             CHARLOTTESVILLE DIVISION


UNITED STATES OF AMERICA       :
                               :
        v.                     :  Criminal No. 3:07:cr00001
                               :
KEVIN ALFRED STROM             :
```

**UNITED STATES'S MOTION IN LIMINE**

**I. INTRODUCTION**

The United States wishes to inform the Court that it may offer as evidence audiotape recordings of therapy sessions between Kevin Strom, Witness A, and their therapist, Harvey Yoder. Undersigned counsel has previously informed defendant's counsel of this possibility, and has provided those recordings to counsel.

**II. FACTS**

On September 8, 2006, defendant and Witness A argued about defendant's pedophilia and his possession of child pornography. Witness A, who was concerned about her child, confronted Strom about his conduct.[1]  Just before this

---

[1] Witness A became concerned about defendant's conduct toward her daughter, and she began sleeping in front of her daughter's door to prevent defendant from entering the child's

confrontation, Witness A had caught defendant while he was completely naked and sitting at his computer looking at pictures of young girls, some of whom Witness A recognized as family friends. When she found him in this condition, defendant ran from her. Before he could make good his escape, she was able to observe that he was sexually aroused. After the argument, defendant executed the notarized statement attached as Exhibit A. In this pseudo contract, defendant agreed to seek counseling for "concerns relating to pedophilia."

Defendant and Witness A began attending therapy sessions with Harvey Yoder at the Family Life Resource Center in Harrisonburg. Without defendant's knowledge, Witness A made audiotape recordings of these therapy sessions. Witness A also recorded a conversation between the two of them at defendant's home in which they discussed the contents of a therapy session Witness A did not attend.

On October 26, 2006, Defendant was approached by James Howard, a case worker with Greene County Social Services, about defendant's conduct towards Witness A, his interaction with a friend's child, and the child pornography on his

---

room at night. Defendant had many pictures of Witness A's daughter on his computer.

computer.  During this interview, defendant "acknowledged looking at nude pictures of teenaged girls on the internet and 'pleasuring himself.'" Defendant admitted to the case worker that what he did was wrong.  In the words of the interview report, "[h]e said he did masturbate to the pictures[, of the teenaged girls,] but that he was only fantasizing." Defendant told Howard that he was seeing therapist Yoder, and that he would sign a release for Yoder to speak with Howard.  On November 27, 2006, Howard interviewed Yoder regarding the therapy sessions.

In a statement on January 4, 2007, defendant told police officers that he had looked at child pornography on his computer.  He said that he downloaded the images from the internet.  He also told the officers that "sometimes I would fantasize that the girls were a little older than they were too. . .[a]nd, you can imagine, well it's not really as bad as it looks.  She's really sixteen she's not thirteen, and so yeah, I'm sure that I looked at things that I'm deeply embarrassed that I ever looked at." Defendant added, "I don't think it was right."  Defendant also admitted that he had masturbated while looking at pictures of young girls and that Witness A had caught him doing so.  During the interview,

defendant told the officers that he was seeing a counselor "to deal with the sexual issues that have been brought up including looking at teenage girls and pornography." He said the following of his counseling: "I am dealing with the fact that . . . my wife caught me masturbating to pictures of young girls." Defendant also told the officers to "Feel free to talk to my counselor if you want," and volunteered to sign a release. He gave the officers Harvey Yoder's name, location and phone number.

### III. ARGUMENT

#### A. DEFENDANT WAIVED ANY PRIVILEGE BY PERMITTING THIRD PARTIES TO TALK TO HIS THERAPIST ABOUT HIS COUNSELING SESSIONS.

The Supreme Court has recognized a federal psychotherapist privilege under Rule 501 of the Federal Rules of Evidence. *Jaffee v. Redmond*, 518 U.S. 1; 116 S.Ct. 1923 (1996). The privilege extends to "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." *Id.* at 1931. Although the full contours of the privilege have not been established, Footnote 19 in *Jaffee* raised the possibility of exceptions: "Although it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do

not doubt that there are situations in which the privilege must give way . . . " *Id.* at 1932.

Federal courts have not yet defined the contours of the waiver of the psychotherapist privilege described by the Court in *Jaffee*. According to *Jaffee*, however, the psychotherapist privilege is comparable to the attorney-client privilege in its purpose and justification: "Like the spousal and attorney-client privileges, the psychotherapist privilege is 'rooted in the imperative need for confidence and trust.'" *Id.* at 1928. Since the privilege is equivalent to the attorney-client privilege, rules of waiver of that privilege apply to the psychotherapist privilege.

Strom waived any claim of privilege to the audiotapes by twice permitting third parties to interview his therapist about his therapy.[2] The law is clear that allowing a third party access to otherwise privileged communication waives the analogous attorney-client privilege. *See Sheet Metal Workers Int'l Assoc. V. Sweeney*, 29 F.3d 120, 125 (4th Cir. 1994)

---

[2] Because the audiotapes were made by a person who was a party to the communication, the recording does not violate 18 U.S.C.S. § 2511(2)(d): "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication..." Furthermore, no marital privilege applies because a third party, Harvey Yoder, was present.

5

(noting that any voluntary disclosure to a third party waives the privilege); *United States v. Oloyede*, 982 F.2d 133, 141 (4th Cir. 1993) (same); *In re Martin Marietta Corp.*, 856 F.3d 619, 623 (4th Cir. 1988) (same); *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (same). The same rule would apply to the psychotherapist privilege.

Defendant effectively waived the privilege twice, first by granting Greene County Social Services case worker James Howard permission to interview his counselor about his therapy and second by giving law enforcement officers permission to do the same. Defendant's willingness to allow third parties to interview his therapist shows that he did not have an expectation of privacy as to the content of those sessions. These grants of permission constitute waiver of the privilege. This Court should therefore rule the audiotapes admissible.

**B. EVEN ABSENT HIS AUTHORIZATION TO SPEAK WITH HIS THERAPISTS, DEFENDANT'S REPEATED PUBLIC ACKNOWLEDGMENTS THAT HE WAS SEEKING TREATMENT FOR PEDOPHILIA DEMONSTRATE THAT HE HAD NO EXPECTATION OF PRIVACY AS TO THE CONTENT OF HIS SESSIONS WITH THE THERAPIST.**

Even if this Court were to find that Defendant's granting multiple government agents permission to interview his therapist did not waive the psychotherapist privilege, it should find Strom's further conduct sufficient to do so.

A third party disclosure waives the privilege as to "all communications on the same subject matter." *Board of Trustees of the Leland Stanford Junior University v. Roche Molecular Systems, Inc.*, 237 F.R.D. 618, 625 (N.D. Cal. 2006). *See also Hawkins*, 148 F.3d 379 at 384 (4th Cir. 1998) (Disclosure waives the privilege as to not only the specific information revealed, but also as to the subject matter of the disclosure); *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (same).

Defendant disclosed the content of his communications with Yoder by describing his therapy to law enforcement and in a publicly notarized document. In an interview with Sheriff Haas and Detective O'Donnell upon his arrest, Defendant told the two men that he was seeing a counselor to deal with the fact that his wife caught him masturbating to pictures of young girls. Furthermore, before law enforcement even began to investigate defendant, he took what can only be described as some form of a contract to a public notary. The contract details the therapy he would undergo with Harvey Yoder for "concerns relating to pedophilia." Defendant's statements to law enforcement and his publicly notarized intent to seek treatment with Harvey Yoder for pedophilia conclusively

7

demonstrate that Defendant had no expectation of confidentiality as to the content of his sessions with Yoder. This Court should therefore find that Defendant waived any privilege as to the audiotapes in question, and that the audiotapes are therefore admissible should he government decide to ask for their admission before the fact-finder.

**IV. CONCLUSION**

Kevin Strom's behavior showed that he lacked the expectation of privacy upon which the psychotherapist privilege rests. He repeatedly waived any privilege by giving a social worker and law enforcement agents permission to talk to his therapist and by personally disclosing the contents of his therapy to those individuals and a public notary. As no legitimate claim of privilege can be made as to the audiotapes at issue, this Court should allow them to be admitted as evidence at trial.

                                        Respectfully submitted,
                                        John L. Brownlee
                                        United States Attorney

                                        S/Bill Gould

                                        William F. Gould
                                        Assistant United States Attorney

Dated: September 7, 2007

<u>C E R T I F I C A T E</u>

I certify that a true and correct copy of this government Motion has been filed through the Court's electronic filing system, which will send a copy to counsel for Strom, Ms. Andrea L. Harris, Esquire, of the Office of the Federal Public Defender, on this 7th day of September, 2007.

<u>S/Bill Gould</u>
William F. Gould
Assistant United States Attorney