VIRGINIA:

IN THE CIRCUIT COURT OF GREENE COUNTY

KEVIN A. STROM,                          )
                                         )
                 Plaintiff,              )
                                         )
v.                                       )          Case No. 06-193
                                         )
ELISHA R. STROM,                         )
                                         )
                 Defendant.              )

**PLAINTIFF'S MOTION FOR AN
ORDER COMPELLING DISCOVERY**

COMES NOW Plaintiff Kevin A. Strom, by counsel, and for his motion as aforesaid states as follows:

INTRODUCTION

Mr. Strom initiated this action on December 27, 2006.  One week later (on January 4, 2007), federal agents arrested him, and he has been confined under federal felony charges since his arrest.  Upon information and belief, Defendant Elisha R. Strom set in motion the events that led to Mr. Strom's arrest.

At the urging of Ms. Strom, the Court scheduled the non-jury trial of this action for May 23, 2007.  No order regarding the conduct of discovery has been entered; as a result, no discovery cut-off date exists in this action.

On May 9, 2007, counsel for Mr. Strom faxed a letter to counsel for Ms. Strom. The letter requested the scheduling of Ms. Strom's deposition on or before May 21, 2007.  A copy of the letter is attached as Exhibit A.

Government Exhibit
No. 209

U.S. v. Kevin Alfred Strom
Case No. 3:07cr00001

A TRUE COPY TESTE:
MARIE C. DURRER, CLERK
BY: *Susan B. Ramker* DEPUTY CLERK
GREENE CO. CIRCUIT COURT
DATE: _9-17-07_

On the afternoon of May 9, 2007, George H. Dygert, counsel for Ms. Strom, spoke with undersigned counsel by telephone.  Mr. Dygert stated that Ms. Strom would not voluntarily submit to a deposition.  Mr. Dygert asserted that counsel for Mr. Strom had failed to comply with Mr. Dygert's direction to see to the entry of a discovery scheduling order.  Mr. Dygert also stated that Mr. Strom was likely to be convicted of the federal criminal charges against him, with the result that he would be imprisoned for years to come.

## ARGUMENT

Ms. Strom's objection to sitting for a deposition is without merit for several reasons.

### A

Notwithstanding Mr. Dygert's displeasure over the lack of a discovery scheduling order in this case, the fact remains that no such order has been entered.  Accordingly, Mr. Strom has the right under the rules of discovery to depose Ms. Strom up to the date of trial.  *See* Va. Sup. Ct. R. 4:5(a) ("After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination."); *see also* Va. Sup. Ct. R. 4:1(d) ("Unless the court . . . orders otherwise, methods of discovery may be used in any sequence . . . .").  Moreover, Mr. Strom made his request for Ms. Strom's deposition two weeks prior to the trial.

### B

There is nothing irregular with regard to either Mr. Strom's desire to take Ms. Strom's deposition or the timing of the request for a deposition.  Mr. Strom's life has been turned upside down, and Ms. Strom set the events in motion that led to this severe

dislocation.   Mr. Strom began the instant proceeding in December 2006.   Not long thereafter, Ms. Strom caused him to be arrested and imprisoned, and these events led to an attempt by the mother of Mr. Strom's children to gain custody of the children and take them to Minnesota.   Thus, Ms. Strom's actions are the direct cause of ongoing battles by Mr. Strom (either personally or through surrogates) on three separate legal fronts (i.e., the federal criminal charges, the custody battle that included proceedings in both Virginia and Minnesota, and the instant proceeding).

What *is* irregular here is Ms. Strom's conduct.   Ms. Strom insisted on the scheduling of the trial of this matter; she has resisted and continues to resist Mr. Strom's request for a continuance; and she now objects to placing herself in a position in which Mr. Strom can, through his counsel, develop further evidence that supports his claims of bad acts on Ms. Strom's part.   In their entirety, Ms. Strom's actions give rise to the reasonable belief that she seeks most strongly to avoid a fair hearing of Mr. Strom's claims against her.

C

Mr. Dygert's comments regarding Mr. Strom's potential imprisonment imply that his claim based on extortion will be moot if he is convicted of the federal criminal charges he faces.   The law is to the contrary.

Mr. Strom contends that Ms. Strom gained both Mr. Strom's share of the Reva Lane house and other valuable property through extortion.   The Supreme Court has recognized a civil claim based on extortion.   *See Williams v. Consolvo*, 237 Va. 608, 613 (1989) ("'Where money has been paid . . . under circumstances of fraud or extortion, . . . an action may be maintained for the money wrongfully exacted.'") (citation

3

omitted).   "[T]he gravamen of extortion is wrongfully obtaining a benefit through coercion." *Strohecker v. Commonwealth*, 23 Va. App. 242, 257 (1996).  Moreover, to the extent that Ms. Strom imagines she has some justification for her actions, the justification is completely without merit:

> A person whose property has been stolen[, or wrongfully withheld,] cannot claim the right to punish the [wrongdoer] himself without process of law, and to make him compensate him for the loss of his property by maliciously threatening to . . . do an injury to his person or property with intent to extort property from him.

*Id.*  Accordingly, how the criminal charges against Mr. Strom are resolved is completely irrelevant to his claim of extortion against Ms. Strom.

D

It is important to keep in mind that Mr. Strom's Complaint sets forth two distinct claims.  One of the claims arises from his contention that Ms. Strom gained various kinds of valuable property from him via extortion.   The other claim, set forth in paragraph 11 of the Complaint and in the prayer for relief, is that Ms. Strom converted many items of Mr. Strom's personal property which remained in the Reva Lane house after Mr. Strom moved out of the house in July 2006.  In this regard, Mr. Strom has on this date supplemented his responses to Ms. Strom discovery requests, and the aggregate value of the personal property described in the supplemental responses is many thousands of dollars.

At trial, Mr. Strom will present abundant, competent evidence from multiple witnesses that Ms. Strom sold much of Mr. Strom's personal property and burned much of his personal property as well.  He also has photographic evidence that supports his conversion claim.  He should, through his counsel, have the ability to depose Ms. Strom

with regard to her conduct toward his property.  No good reason exists for denying such a deposition.

## CONCLUSION

Based on the foregoing introduction and argument, Mr. Strom respectfully prays that the Court sustain his Motion for an Order Compelling Discovery by entering an order which directs Ms. Strom to present herself to Mr. Strom's counsel for a deposition at a mutually agreeable date and time on or prior to May 21, 2007.

RESPECTFULLY SUBMITTED this _10th_ day of May, 2007.

KEVIN A. STROM

By _____
                                   Counsel

Francis L. Buck, Esquire, VSB No. 12361
Bradford M. Young, Esquire, VSB No. 31623
BUCK, TOSCANO & TERESKERZ, LTD.
211 East High Street
Charlottesville, Virginia  22902
Phone:  (434) 977-7977
Fax:  (434) 977-4847
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on May _10_, 2007, I delivered a true copy of this document to George H. Dygert, Esquire, by (i) faxing the same to 434-295-7785 and (ii) mailing the same by first class mail to Mr. Dygert at 675 Peter Jefferson Parkway, Suite 190, Charlottesville, Virginia, 22911.

# BUCK, TOSCANO & TERESKERZ, LTD.

### ATTORNEYS AT LAW

211 EAST HIGH STREET
CHARLOTTESVILLE, VA 22902

FRANCIS L. BUCK
DAVID J. TOSCANO
TERRY L. TERESKERZ
BRADFORD M. YOUNG
OF COUNSEL:
PATTI M. TERESKERZ

May 9, 2007

PHONE: 434 977-7977
FACSIMILE: 434 977-4847
btt@bttlaw.com

**BY FAX (295-7785) AND REGULAR MAIL**

George H. Dygert, Esquire
675 Peter Jefferson Parkway, Suite 190
Charlottesville, Virginia  22911

Re:   *Kevin A. Strom v. Elisha R. Strom*, Case No. CL06-193,
        Circuit Court of Greene County

Dear George:

As you know, Kevin A. Strom is seeking a continuance of the trial of the above-referenced case.  Nevertheless, we believe it would be prudent for us to depose Elisha R. Strom.  Accordingly, I request that you provide me dates between now and May 21 when you and Ms. Strom are available for a deposition. We believe that a half-day will be necessary for the deposition.

Cordially,

Bradford M. Young

cc:    Francis L. Buck, Esquire
        Mr. Kevin A. Strom

EXHIBIT A

3

**GREENE COUNTY CIRCUIT COURT**          **Case Number** CL-07-16

Kevin A. Strom          VS          Elisha R. Strom

### Table of Contents
### Page 1

Rule 5:13 & 5A:10

| Name of Paper | Date Filed | Page Number |
|---|---|---|
| Notice of Appeal | 1-25-07 | 1 |
| Petition | 1-25-07 | 2-3 |
| Order | 1-25-07 | 4 |
| Receipt | 1-25-07 | 5 |
| Preliminary Order | 2-13-07 | 6 |

A TRUE COPY TESTE:
MARIE C. DURRER, CLERK
BY: Susan B. Rankin DEPUTY CLERK
GREENE CO. CIRCUIT COURT
DATE: 9-17-07

I, the undersigned, certify that the papers listed above and filed herein are the original papers entered in the above-styled case and constitute the true and complete record in this case except for exhibits whose omission is noted in the table of contents.

Government Exhibit
No. 208

10/3/07

U.S. v. Kevin Alfred Strom
Case No. 3:07cr00001

Marie C. Durrer, Clerk
By: _____ Clerk/Deputy Clerk
Greene County Circuit Court

FORM DC-475 REVISED 12/05

# NOTICE OF APPEAL – CIVIL
Commonwealth of Virginia    VA. CODE §§ 16.1-106, 16.1-107, 16.1-298

GREENE COMBINED - ADULT

_____    12.7.06
                                     DATE OF FINAL ORDER

[ ] General District Court           [X] Juvenile and Domestic Relations District Court

I, the undersigned, note my appeal of the judgment of this Court to the Circuit Court of this city or county, which is located
at _____    CITY OR COUNTY
   22 Court St. Standardsville, VA 22973
   STREET ADDRESS OF CIRCUIT COURT              TELEPHONE  434 985 5206

[X] My case is scheduled to be called for [ ] trial [X] setting of trial date on
Feb. 14 2007 @ 11:00am
DATE AND TIME OF APPEARANCE

[X] I understand that I must contact the circuit court clerk's office for instructions for setting the trial date. I understand
that within 30 days, or 10 days in unlawful detainer cases, of the entry of judgment, I must deliver to the Clerk of this
Court:

    a. $  79 00 _____  for Circuit Court writ tax, costs, and fees for service of process, if applicable.

    b. $  250 00 _____  appeal bond with sufficient surety approved by the Judge or Clerk of this Court or cash
    deposit. The appeal bond must be written to indemnify the party in whose favor a judgment was rendered in
    this Court in the event that such party is awarded a judgment on appeal in Circuit Court.

I also understand that I must pay the writ tax and costs if applicable and post the appeal bond within 30 days, or 10 days in
unlawful detainer cases, of the entry of judgment for the appeal in my case to be complete ("perfected"), and that my failure
to do so within the 30 day period, or 10 day period in unlawful detainer cases, will result in the loss of my appeal rights. I
further understand that the order or judgment which I am appealing remains in full force and effect if it involves support, a
protective order, continuing programs pursuant to Virginia Code § 16.1-1-289.1 or other proceedings appealed by law, until
changed or annulled by the circuit court.

12/8/2006 _____
DATE APPEAL NOTED

                                    _____
                                    APPELLANT: KEVIN A. STROM
                                    [X] PLAINTIFF/PETITIONER
                                    [ ] DEFENDANT/RESPONDENT

by  Frank Buck
   _____
   ATTORNEY FOR APPELLANT

NOTICE: Promptly communicate with the Clerk of the Circuit Court of this jurisdiction concerning
the subpoenaing of witnesses and any need for interpreters, and if you wish to request a jury trial.
Failure to appear in the circuit court at the designated date and time may result in the dismissal of your
appeal.

---

## NOTICE OF APPEAL

| | |
|---|---|
| CASE NO. | JA003121-02-00 |

STROM , KEVIN A.
PLAINTIFF/PETITIONER NAME (LAST, FIRST, MIDDLE)

STANDARDSVILLE
                              R.D.
_____

ELISHA R. STROM
DEFENDANT/RESPONDENT NAME (LAST, FIRST, MIDDLE)

STANDARDSVILLE VA 22973
█████████ VA LANE

JUDGEMENT DATE:            STANDARDSVILLE VA 22973

12/07/2006

PLAINTIFF'S/PETITIONER'S ATTORNEY
[X] Same as on Attached

DEFENDANT'S/RESPONDENT'S ATTORNEY
[ ] Same as on Attached

RCPT : 07000000544
DATE : 01/25/07 TIME: 09:19
CASE : 07JCL07000016-00
ACCT : STROM, KEVIN A.
AMT  :           $329.00

VALIDATE CASE PAPERS

Green Co. Circuit Court
Susan B. Rankin Dep.

**A TRUE COPY TESTE:**
**MARIE C. DURRER, CLERK**

BY: Susan B. Rankin  **DEPUTY CLERK**

**GREENE CO. CIRCUIT COURT**

DATE: __9-17-07__

**PETITION FOR PROTECTIVE ORDER — FAMILY ABUSE**

Commonwealth of Virginia
Va. Code Ann. 16.1-241(M), 16.1-253.1, 16.1-279.1

Case No. _____

Hearing Date and Time: 12/7/06 @ 9:00 AO

**GREENE COUNTY** Juvenile and Domestic Relations District Court

**KEVIN ALFRED STROM**   v.   **ELISHA RACHEL STROM**

PETITIONER                        RESPONDENT

Please provide address and telephone number information on Form DC-621, NON-DISCLOSURE ADDENDUM.

ADDRESS/LOCATION

▓▓▓▓▓▓ LANE

STANARDSVILLE, VA 22973

Social Security No. ▓▓▓▓▓▓

Telephone No. (H) ▓▓▓▓▓▓
(W)

The undersigned Petitioner respectfully represents to the Court that:

1. The Petitioner and Respondent are family or household members.

2. The Respondent is committing or, within a reasonable time, has committed the following acts of family abuse:

| RACE | SEX | BORN | | | HT. | | WGT. | EYES | HAIR |
|------|-----|------|---|---|-----|---|------|------|------|
| | | MO. | DAY | YR. | FT. | IN. | | | |
| W | F | ▓▓▓▓ | | | 5 | 5 | 120 | BRN | BRN |

RESPONDENT'S DESCRIPTION

☐ See accompanying affidavit.
☒ ON 11/30/06, RESPONDENT WENT TO PETITIONER'S HOME AND BANGED ON DOOR. WHEN SHE WAS NOT PERMITTED TO ENTER, SHE SAID, "YOU'LL BE SORRY". PETITIONER STATES THAT SHE HAS ASSAULTED AND THREATENED TO KILL HIM IN THE PAST. HE IS IN FEAR.

3. (Check one box)
☐ Other cases involving the Petitioner and Respondent have been filed in Virginia courts.
☒ No other case involving the Petitioner and Respondent has been filed in any other Virginia court.

PETITIONER, THEREFORE, RESPECTFULLY REQUESTS that ☒ a preliminary protective order ☒ a protective order be issued and that such order impose the following conditions on the Respondent and such other conditions as the judge deems appropriate as allowed by law:

☒ Prohibiting further acts of family abuse.
☒ Granting the Petitioner possession of the premises occupied by Petitioner and Respondent to the exclusion of the Respondent. This residence is located at:
▓▓▓▓▓▓ , STANARDSVILLE, VA
☒ Prohibiting the Respondent from terminating ☐ requiring that the Respondent restore necessary utility service(s) to the premises indicated above, specifically,
**ANY UTILITY SERVICES**

UTILITY SERVICE(S)

☒ Granting the Petitioner temporary exclusive possession or use of a motor vehicle jointly owned by the parties or owned by the Petitioner alone, described as follows:
**1995 DODGE CARAVAN**

☐ Requiring that the Respondent provide suitable alternative housing for
☐ Petitioner ☐ and other family or household members ☐ and require the Respondent to pay deposit(s) to connect or restore necessary utility service(s) in the alternative housing, specifically,

UTILITY SERVICE(S)

☒ Prohibiting such other contact with the Petitioner as the judge deems appropriate.
☒ Prohibiting such other contact with the other family or household members named below as the judge deems necessary to protect their safety:
**EDGAR STROM, OSKAR STROM, KLARA STROM, MARY LOU SCHNEIDER AND RONALD SCHNEIDER**

☐ Granting temporary custody or visitation of a minor child or children to Petitioner (UCCJEA affidavit attached).
(PROTECTIVE ORDER only.)
☐ Provide temporary support for minor children.
☐ Other relief necessary for protection:

**11/30/2006**
DATE

_____
PETITIONER

ATTORNEY'S ADDRESS AND TELEPHONE NUMBER

(When attested, this Petition shall also be an affidavit of the facts as stated in the Petition.)
Sworn to/affirmed and signed before me this day.

**11/30/2006**
DATE

by _____
PETITIONER'S ATTORNEY

[ ] INTAKE OFFICER [ ] CLERK
[ ] NOTARY PUBLIC: My commission expires

FORM DC-611 (MASTER, PAGE ONE OF TWO) 7/06

VCC: PRT-3836-J9   ICN: 1682730   SC# 079JAX001701185

*Greene Co. Circuit Court*
*VALIDATE CASE PAPERS Susan B. Rankin Dep.*
RCPT : 07000000548
DATE : 01/25/07 TIME: 09:19
CASE : 079CL07000016-00
PLTF: STROM, KEVIN
AMT. $329.00

**COURT COPY**

A TRUE COPY TESTE:
MARIE C. DURRER, CLERK
BY: Susan B. Rankin DEPUTY CLERK
GREENE CO. CIRCUIT COURT
DATE: 9-1-07

Va. code § _____

Hearing ____ and Time: 12|7|06 @ 9:00

**GREENE COUNTY** Juvenile and Domestic Relations District Court

**KEVIN ALFRED STROM** v. **ELISHA RACHEL STROM**

PETITIONER                                    RESPONDENT

Please provide address and telephone number information on Form DC-621, NON-DISCLOSURE ADDENDUM.

ADDRESS/LOCATION

████████████████

**STANARDSVILLE, VA 22973**

Social Security No. ████████████

Telephone No. (H) **(703) 842-4365**

(W)

The undersigned Petitioner respectfully represents to the Court that:

1. The Petitioner and Respondent are family or household members.

2. The Respondent is committing acts or, within a reasonable time, has committed the following acts of family abuse:

| RESPONDENT'S DESCRIPTION | | | | | | | |
|---|---|---|---|---|---|---|---|
| RACE | SEX | BORN | | | HT. | | |
| | | NO. | DAY | YR. | FT. | IN. | WGT. | EYES | HAIR |
| W | F | █ | | | 5 | 5 | 120 | BRN | BRN |

☐ See accompanying affidavit.

☒ ON 11/30/06, RESPONDENT WENT TO PETITIONER'S HOME AND BANGED ON DOOR.  WHEN SHE WAS NOT PERMITTED TO ENTER, SHE SAID, "YOU'LL BE SORRY".  PETITIONER STATES THAT SHE HAS ASSAULTED AND THREATENED TO KILL HIM IN THE PAST.  HE IS IN FEAR.

3. (Check one box)

☐ Other cases involving the Petitioner and Respondent have been filed in Virginia courts.

☒ No other case involving the Petitioner and Respondent has been filed in any other Virginia court.

PETITIONER, THEREFORE, RESPECTFULLY REQUESTS that ☒ a preliminary protective order ☒ a protective order be issued and that such order impose the following conditions on the Respondent and such other conditions as the judge deems appropriate as allowed by law:

☒ Prohibiting further acts of family abuse.

☒ Granting the Petitioner possession of the premises occupied by Petitioner and Respondent to the exclusion of the Respondent. This residence is located at:

████████████████ **STANARDSVILLE, VA**

☒ Prohibiting the Respondent from terminating ☐ requiring that the Respondent restore necessary utility service(s) to the premises indicated above, specifically, **ANY UTILITY SERVICES**

UTILITY SERVICE(S)

☒ Granting the Petitioner temporary exclusive possession or use of a motor vehicle jointly owned by the parties or owned by the Petitioner alone, described as follows:

**1995 DODGE CARAVAN**

☐ Requiring the Respondent provide suitable alternative housing for the ☐ Petitioner ☐ and other family or household members ☐ and require the Respondent pay deposit(s) to connect or restore necessary utility service(s) in the alternative housing, specifically,

UTILITY SERVICE(S)

☒ Prohibiting such other contact with the Petitioner as the judge deems appropriate.

☒ Prohibiting such other contact with the other family or household members named below as the judge deems necessary to protect their safety:

**EDGAR STROM, OSKAR STROM, KLARA STROM, MARY LOU SCHNEIDER AND RONALD SCHNEIDER**

☐ Granting temporary custody or visitation of a minor child or children to Petitioner (UCCJEA affidavit attached).

☐ Provide temporary support for minor children.                    (PROTECTIVE ORDER only.)

☐ Other relief necessary for protection:

**11/30/2006**
DATE

_____
PETITIONER

by

ATTORNEY'S ADDRESS AND TELEPHONE NUMBER

PETITIONER'S ATTORNEY

(When attested, this Petition shall also be an affidavit of the facts as stated in the Petition.)

Sworn to/affirmed and signed before me this day.

**11/30/2006**
DATE

☐ INTAKE OFFICER ☐ CLERK
☐ NOTARY PUBLIC: My commission expires

VCC: PRT-3836-J9          ICN: 1682730          SC# 079JAX001701185

COURT
COPY

Greene Co Sheriff's Off
RECEIVED

Greene Co. Circuit Court
VALIDATE CASE PAPERS Susan B. Rankin
RCPT: R000005549            Dep
DATE: 01/29/07 TIME: 09:19
CASE : 079CL07000016-00
AMT: $229.00

A TRUE COPY TESTE:
MARIE C. DURRER, CLERK
GREENE CO. CIRCUIT COURT
BY: Susan B. Rankin DEPUTY CLERK

DATE _____ 12/7/06 _____

RE: Strom, Elisha Rachel _____

FILE #: JA003121-02-00 _____

DATE OF BIRTH: ▇▇▇▇▇▇         SSN: ▇▇▇▇▇▇▇▇

HEARD TODAY ON THE PETITION FOR PROTECTIVE ORDER OF:

_____ Kevin Strom _____

_____

FILED: _____

PRESENT: $\pi$ _____

       $\Delta$ _____

_____

_____ Greene Co. Circuit Court

VALIDATE CASE PAPERS Susan B Rankin

Dep.

RCPT : 07000000548

DATE : 01/25/07 TIME: 09:19

CASE : 079CL07000016-00

ACCT : STROM, KEVIN A.

PAID $329.00

ORDER:

_____ COURT MAKES A FINDING OF ABUSE

✓ COURT MAKES NO FINDING 0F ABUSE

_____ EVIDENCE SUFFICIENT TO ESTABLISH PROBABLE
CAUSE THAT FAMILY ABUSE OCCURRED

_____ PRELIMINARY PROTECTIVE ORDER ENTERED

CASE CONTINUED TO: _____

COURT FURTHER ORDERS _Court denies Petition for Protective Order_
_as it appears π is using an attempt to use this avenue_
_to address handle issues of equitable distribution rather_
_than issues of domestic violence._

_____

_____ Curry _____

JUDGE

A TRUE COPY TESTE:
MARIE C. DURRER, CLERK
BY: Susan B Rankin, DEPUTY CLERK
GREENE CO. CIRCUIT COURT
DATE: 1/7-07

VIRGINIA:

IN THE CIRCUIT COURT OF GREENE COUNTY

KEVIN A. STROM,                          )
                        Plaintiff,       )
                                         )
v.                                       )        Case No. 06-193
                                         )
ELISHA R. STROM,                         )
                                         )
                        Defendant.       )
                                         )

**PLAINTIFF'S MOTION FOR A CONTINUANCE
OF THE TRIAL SCHEDULED FOR MAY 23, 2007**

TRUE COPY TESTE:
MARIE C. DURRER, CLERK
Y: _Susan B. Rankin_ DEPUTY CLERK
REENE CO. CIRCUIT COURT
ATE: ___9-17-07___

COMES NOW Plaintiff Kevin A. Strom, by counsel, and for his motion as aforesaid states as follows:

<u>INTRODUCTION</u>

Mr. Strom initiated this action on December 27, 2006.  One week later (on January 4, 2007), federal agents arrested him, and he has been confined under federal felony charges since his arrest.  Upon information and belief, Defendant Elisha R. Strom set in motion the events that led to Mr. Strom's arrest.

Ms. Strom placed this case on the Court's motions docket for February 12, 2007.  On that date undersigned counsel sent the Court a letter by fax requesting that the case be passed over until the April 2007 docket call because Mr. Strom's federal criminal trial was scheduled for March 15, 2007.  Ms. Strom nevertheless persisted in her request for a trial date, and the Court scheduled the non-jury trial of this action for May 23, 2007.  After the February docket call the federal government secured a superseding indictment of Mr. Strom, and his trial date in federal court is now tentatively set for June 2007.

Government Exhibit
No. 210
U.S. v. Kevin Alfred Strom
Case No. 3:07-cr-00001

Attached as Exhibit A is a copy of Mr. Strom's responses to Ms. Strom's discovery requests.  His response to her first interrogatory extends from page 1 to page 10 of the exhibit.  A review of the response reveals that the Court will have numerous occasions at the trial to determine the credibility between the testimony of Mr. Strom or Ms. Strom, and these determinations will decide who prevails in this action.

## ARGUMENT

As the facts stated in the introduction show, on the date set for the trial of this action Mr. Strom will continue to be in jail on pending federal charges.  Although undersigned counsel has spoken with the United States Attorney's Office, the United States Marshal's Office, and the jailers at the Albemarle Charlottesville Regional Jail (where Mr. Strom is held), counsel has been unsuccessful in obtaining an agreement that will make Mr. Strom available for the trial of his action against Ms. Strom.

Undersigned counsel has also diligently searched without success for a procedural mechanism to apply in federal court that will lead to Mr. Strom's physical presence at the trial of this matter.  To the contrary, extant authority arising from a mirror-image situation (i.e., a state prisoner with a civil case pending in federal court) strongly suggests that such a mechanism does not exist:

> The All Writs Act [28 U.S.C. § 1651] is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.  We need not categorically rule out reliance on the All Writs Act and the use of Marshals in procuring or safeguarding state prisoner-witnesses in the course of federal litigation.  There may be exceptional circumstances in which a district court can show clearly the inadequacy of

traditional habeas corpus writs, such as where there are serious security risks. In such circumstances, a district court may find it "necessary or appropriate" for Marshals to transport state prisoners. We therefore leave open the question of the availability of the All Writs Act to authorize such an order where exceptional circumstances require it.

> *We conclude, at least in the absence of an express finding of exceptional circumstances, that neither a magistrate nor a district court has authority to order the Marshals to transport state prisoners to the federal courthouse to testify in an action brought by a state prisoner under 42 U. S. C. § 1983 against county officials.*

*Pa. Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) (emphasis added).

The reality which faces the parties and the Court is that there is no way for Mr. Strom to attend the trial of this action on May 23, 2007. This fact is, for at least two reasons, fatal to the propriety of the trial proceeding as currently scheduled.

First, given that the trial of this action will resolve Mr. Strom's claim to thousands of dollars, it would be a plain violation of his constitutional right to due process for the trial to proceed without his physical presence:

> [D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard. . . . Although "many controversies have raged about the cryptic and abstract words of the Due Process Clause, there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for *hearing appropriate to the nature of the case.*"
>
> . . . What the Constitution . . . require[s] is "an opportunity . . . granted at a meaningful time and in a meaningful manner for *[a] hearing appropriate to the nature of the case.*" . . . That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing before he is deprived of any significant property interest, except for extraordinary situations where some

3

> valid governmental interest is at stake that justifies postponing the hearing until after the event. In short, "within the limits of practicability," a State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause.

*Boddie v. Conn.*, 401 U.S. 371, 377-79 (1971) (citations and footnotes omitted) (emphasis added).

It is significant that in *Boddie* the Supreme Court not once but twice used the phrase "a hearing appropriate to the nature of the case." In this action, the respective credibility of the parties is the crucial issue, and the trial before the Court is the ultimate mechanism for evaluating that credibility. Conducting the trial without Mr. Strom's physical presence would clearly be inappropriate to the nature of the case.

Second, Mr. Strom's absence from the trial would undermine a key jurisprudential value that the Supreme Court of Virginia has identified: "[T]he importance of having the action resolved on the merits." *Shaheen v. County of Mathews*, 265 Va. 462, 473 (2003). It is impossible for the Court to adjudicate Mr. Strom's claims fairly and on their merits if (i) the Court has no opportunity to judge Mr. Strom's credibility by observing him in person at the trial, (ii) he has no opportunity to hear the testimony of Ms. Strom's witnesses and to see her evidence so as to rebut the same, and (iii) he is not allowed to assist his counsel at trial. *Cf. Harlan v. Lewis*, 982 F.2d 1255, 1264 (8th Cir. 1993) ("When a doctor is a party to the action, four different considerations apply: (1) the party doctor has a right to be represented by counsel; (2) *this right is meaningless without the ability to converse freely with counsel about the representation . . . .*") (emphasis added).

4

## CONCLUSION

Based on the foregoing introduction and argument, Mr. Strom respectfully prays that the Court sustain his Motion for a Continuance of the Trial Scheduled for May 23, 2007, by continuing the trial generally pending the outcome of the federal criminal proceeding against Mr. Strom.

RESPECTFULLY SUBMITTED this ⟨handwritten⟩ 2d day of May, 2007.

KEVIN A. STROM

By _____
                    Counsel

Francis L. Buck, Esquire, VSB No. 12361
Bradford M. Young, Esquire, VSB No. 31623
BUCK, TOSCANO & TERESKERZ, LTD.
211 East High Street
Charlottesville, Virginia  22902
Phone:  (434) 977-7977
Fax:  (434) 977-4847
Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on May ⟨handwritten⟩ 2 , 2007, I delivered a true copy of this document to George H. Dygert, Esquire, by (i) faxing the same to 434-295-7785 and (ii) mailing the same by first class mail to Mr. Dygert at 675 Peter Jefferson Parkway, Suite 190, Charlottesville, Virginia, 22911.

_____

5

VIRGINIA:

IN THE CIRCUIT COURT OF GREENE COUNTY

KEVIN A. STROM,                    )
                                   )
              Plaintiff,           )
                                   )
v.                                 )            Case No. 06-193
                                   )
ELISHA R. STROM,                   )
                                   )
              Defendant.           )

## PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

COMES NOW Plaintiff Kevin A. Strom, by counsel, and for his responses as aforesaid states as follows:

### INTERROGATORIES

1.      State each fact which you contend support[s] the allegations contained in paragraph 4 of the Complaint.

**ANSWER:**

### 2000

I married Elisha Rachel Strom in May 2000.  We lived in Minnesota at the time of our marriage.   Only weeks into our marriage, she began to exhibit jealousy and suspicion if she became aware that I had looked at or spoken with an attractive woman. I was not unfaithful to Elisha, and there was no basis for her fits of jealousy and suspicion.

EXHIBIT A

In December 2000 we moved to Virginia at Elisha's urging.  She also prevailed upon me to agree to the purchase of a house that was beyond our means.  She promised to obtain one or two full-time jobs to help pay for the house, but she rarely worked in the years that followed.

<u>2001</u>

By the spring of 2001 the move to Virginia had led to the loss of almost all of my parenting time with the three children (Oskar, born in 1993; Edgar, born in 1994 and severely autistic; and Klara, born in 1996) that I fathered during my previous marriage to Kirsten Kaiser.  The children remain in Minnesota with their mother.

Around the middle of 2001 Elisha began downloading many dozens of pictures of (i) interiors of palaces and fine homes, featuring antiques and fine art, and (ii) pictures of naked teenage girls, and pasting them together as collages using a photo editing program.  She "posed" the girls on and around the furniture of the interiors shown in the photos, sometimes with an image of me pasted in, too.  I told her that her actions made me uncomfortable and that I didn't want her to create the collages, but she continued doing so.

<u>2002</u>

In 2002 Elisha became convinced, though without any reasonable basis, that I was carrying on an affair with Kirsten Kaiser.  Elisha's irrational belief in this alleged affair drove her to destroy property in our home, to throw items around the home, and to engage in vividly obscene verbal abuse of me.  Elisha did these actions within the hearing of Ana, her pre-adolescent daughter.

Also in 2002, Elisha, totally against my wishes, began downloading pictures of extreme hard-core pornography and using a photo-editing program to paste Kirsten Kaiser's head on the bodies in some of the pornographic images.  She then published these images on the Internet without attribution but with Kirsten's name attached to them in order to hurt Kirsten and to make relations worse than ever between Kirsten and me.  She also, against my wishes, anonymously emailed extreme pornographic images to others with whom she was feuding on the Internet.

<u>2003</u>

In 2003 Elisha began interfering with and sabotaging my visits with my children. She was often cold to them when they were present in our home in Virginia.  (For example, during one visit of several weeks' duration in 2004, she completely "froze out" Oskar and refused to speak to him.)  Her verbal abuse of my children became worse beginning in 2003, and she made extremely abusive and obscene comments to Kirsten Kaiser, and these actions led to my children not being permitted to see me on occasion.

Elisha's verbal abuse, destructive tantrums, and threats of violence during 2003 were so severe that I suggested she see a counselor about her anger problem.  My suggestion enraged her even more and she refused.  My expressed belief that she had an anger problem spurred even greater anger on her part.

In 2003 Elisha admitted in a moment of anger that she hated my children and was glad that I had lost most of my custody of them.  She said that they interfered with the attention I should be giving her.  At a family meeting (which I called) in which my parents were present, Elisha suggested that we should just give up on my children and forget about them.

Elisha and I saw a counselor (Harvey Yoder of Family Life Resource Center in Harrisonburg, Virginia) in 2003. I initiated the visit because Elisha adamantly refused to permit any visit from my children during the upcoming Christmas holiday. At the counseling sessions, Elisha reluctantly agreed to permit the visit.

During the Christmas 2003 visit, Elisha treated me and the children with conspicuous derision and contempt. In one memorable incident, she spewed vitriol and hate and obscenities at me because she did not want to open a box of mementos and show them to Oskar. At one point the next day, I called my stepfather from the car and we made alternative arrangements for a day because I was literally afraid to go home due to Elisha's frightening fits of anger.

<u>2004</u>

In 2004 my ex-wife, Kirsten Kaiser, admitted that she could not care for my autistic son Edgar. The Minnesota court transferred full custody of Edgar to me and he came to our home in Virginia. While Edgar was at our home during afternoon educational testing in Greene County for his autism, Elisha insisted that she have no contact with him whatsoever. She directed me (i) to ready him for school and to remove him from the house until time for school, (ii) to place him in daycare at times when I was unavailable to go out with him (but she insisted that I take him there and retrieve him), and (iii) to keep him out of the home after school until 7:00 p.m., and (iv) to bring him home precisely at 7:00 p.m. so that he could eat and then immediately go to bed (even if he was not tired). I reluctantly agreed with her demands to keep the peace.

Notwithstanding my compliance with Elisha's demands, she ultimately called a family meeting in which she declared that she would leave if Edgar continued to live in

our home.   However, Greene County determined that a boarding school, Winchester's Grafton, was best for Edgar, and his move to this school eliminated further fights and demands from Elisha on his account.

Elisha's anger problem became worse and worse in 2004.   Due to a trivial matter, she hurled a heavy pot onto the stovetop and broke the stovetop beyond repair.   She damaged doors and walls and split a door frame by slamming doors in extreme anger. She threw heavy glassware at me so hard that it traveled all the way through the wall. She abused me verbally and also began to hit me.   She continued to believe that I was having secret meetings, exchanging secret messages, and having secret liaisons with Kirsten Kaiser.

<u>2005</u>

In 2005 Elisha became convinced, completely without reason, that I was conducting a secret affair with Lynx and Lamb Gaede, the twin 14-year-old singers of nationalist band Prussian Blue.   She accused me of setting up clandestine trysts with them at concerts and cultural festivals.   She also accursed me of purposely (in her words) "sucking up" to the twins' mother, April Gaede (to whom she referred in very obscene terms), so as to "get close" to Lynx and Lamb.

In 2005 Elisha also became convinced, again without any reason, that I had sexual designs on the school and neighborhood friends of Elisha's daughter Ana.   (The friends were a number of girls of about nine years of age.)   In full hearing of Ana, Elisha accused me of "wanting to come all over (child's name)"; "you want to f*** (child's name), don't you, you f***ing pedophile," and similar statements.   Elisha made such comments dozens upon dozens of times.   Some of Elisha's comments were reported back to the

parents of Ana's friends.  The parents understandably became alarmed, despite the fact that I had never done anything improper with any young girl, nor had I ever wanted to engage in such conduct.

As 2005 wore on, Elisha's verbal abuse became worse than ever in terms of her tirades of accusations, and her abuse also became more physical as well. She struck me with great force on numerous occasions.  She was strong, for she had been engaging in weight training for many months at the Blue Ridge Fitness Center.  On three separate occasions she caused injuries to me that included bleeding or visible bruises on my body.  She also repeatedly said that I deserved to die and that she wanted to kill me.  I urged her to see counselors about these statements, but my comments did no good.

On the night of October 17-18, 2005, Elisha was in a rage because I had denied her baseless accusation that I had had any improper relations with Lynx and Lamb Gaede during a business trip to Phoenix the previous two days.  Elisha cornered me in our bedroom, brandishing a large, metal-based antique telephone, and she struck me with the telephone with great force.  The impact was on my temple.  I saw stars for a moment, and then experienced heavy bleeding.  Blood flowed from the wound onto the floor and walls all the way to the kitchen, where I went to try to stanch the flow with paper towels.  I also felt severe pain.  Nine-year-old Ana woke up and saw the aftermath.

On the night that Elisha struck me with the telephone, I called my stepfather, Ronald Schneider, and he came into my house and observed the physical evidence described above.  He also heard Elisha's confession that she had attacked me.  Ron

and my mother, Mary Lou Schneider (who had remained in the car when Ron came into the house), transported me to Martha Jefferson Hospital.  At the hospital I received treatment including eight stitches.  I still bear a scar on my temple from this attack.

Elisha promised that if I would (i) not report the October 2005 attack to the police and (ii) pay approximately $7,000.00 for cosmetic surgery (breast augmentation and tummy tuck) for her (which I had previously opposed) to "improve her self image," she would change her ways and heal our relationship.  I was in great pain agony and made the extremely foolish decision to believe her.

<u>2006</u>

Elisha did not keep her promises.  Her verbal abuse, threats, and physical abuse eventually resumed. By June 2006 she had again hit me many times, twice hard enough to cause bruises on my arms and chest and bleeding right next to my left eye.

Elisha also told me (and showed me the proof in April 2006) that shortly after her attack on me in October 2005, she had installed hidden video cameras in several locations around the house including the bathroom and my office, along with video recorders to record me without my consent.

Elisha told me that her possession of recordings of me meant that she was now "in charge."  She demanded control over my domestic and professional activities, including who I was to call and talk to and in many cases what I could or could not say. She forbade me to talk to anyone about the violence and anger and threats she directed at me.  When I tried to bring these issues up in a counseling session she had reluctantly agreed to attend, she walked out.

Elisha also stated that all visits from my children and contact with my ex-wife were now under Elisha's control.  She said that she had made numerous copies of the video recordings and had placed them in the custody of an unnamed friend.  She said the recordings were already in envelopes addressed to a large number of my friends, family, neighbors, and associates, and would, whenever Elisha "gave the word," be mailed out, instantly ruining my reputation.

Elisha stated that there was "a chance" she might give me a "peaceful divorce," but that I must sign the house over to her, never tell anyone about her violent behavior, and pay her an unspecified amount of money, and in every other way satisfy her - or she would direct the packets to be mailed out.

I resigned all my professional positions to protect my business associates as much as I could from the potential scandal that Elisha threatened.

I gave in to Elisha's blackmail in every way.   Under duress, I quitclaimed my interest in our house to her.  I left the home for my own safety on July 14, 2006, taking only my laptop, a handful of clothes and some boxes of rare historical papers with me. Afterwards I begged Elisha numerous times to let me have my entire lifetime's worth of personal property as well as the property of my children, all of which property was still located in the house. On September 8, 2006, I gave her a summary list of what I needed to retrieve.  She laughed at my requests and held a two-day indoor "rummage sale" on the weekend of September 23 and 24, 2006.

The day I left the house (July 14, 2006), Elisha took all the money in my wallet (over $800.00).  She also took my Union Bank and Trust debit card and used it for her own benefit thereafter.  She illegally endorsed my autistic son Edgar's SSI check for

August 2006 and used the proceeds for her own benefit. She demanded that I pay her $1,800.00 a few days later. She also demanded that I agree to a mediation agreement under which I would pay her $1,415.00 every month; the ostensible reason for this monthly payment was to cover the mortgage and her personal expenses. I gave in, under duress and threat of blackmail, to all of her extortions.

Elisha told federal law enforcement agents that I was using child pornography and gave my personal computer, which she was illegally holding without my consent, to the agents. Thereafter the agents served a warrant on my new home and seized my laptop and my son's computer. She stated, directly or indirectly, to Greene County Social Services the falsehood that I had sexually abused my stepdaughter Ana.

In the fall of 2006 I decided to resist Elisha's blackmail. I reported her crimes to state law enforcement officials.

Elisha failed to pay the mortgage from the monthly payments that I paid her under the mediation agreement. The house was ultimately sold at a trustee's sale. Elisha continues to refuse to allow me to retrieve my property and my children's property, as well as the property of the estate of Revilo P. Oliver. She gained possession of all of this property when I left our house on July 14, 2006.

After I moved, Elisha came twice to the new home where I lived with my children Oskar and Klara prior to my arrest in January 2007. Elisha first came to my new home on or about October 9, 2006. She demanded that I sign some documents relating to one of my automobiles, to which demands I acceded out of fear, though I did not allow her in the house. During her visit she made obscene accusations in a loud voice and

threatened to smear my name to my neighbors via the aforesaid recordings and other baseless accusations.

I wrote to Elisha on November 17, 2006, and in the course of the letter I again asked for my property back. I also instructed her not to come back to my new home. Nevertheless, she returned again, on or about November 30, 2006. She was enraged and shouting and she banged on the kitchen door with unnecessary force. She demanded that I pay her money and provide her with my telephone number. I did not give in to her demands. (Her second visit to my new home occurred the day after I decided not to be afraid of the blackmail any more and reported her violence and other crimes to a magistrate.) I asked her to leave and she yelled that if I did not do what she wanted, I "would be sorry." She also stated that she was going to send the video recordings to all my neighbors along with "flyers" identifying me with photographs of my new home and my vehicle and accusing me of being a child molester. In fear of what her threats might imply, I called 911. As I talked with the 911 operator, Elisha walked around my property, taking photographs of my house and car. She departed shortly before the officers arrived.

2.     Identify each person with knowledge of each of the facts stated in your response to the immediately preceding Interrogatory, stating when each person obtained that knowledge, how each person obtained that knowledge of each such fact.

**ANSWER:**   As my response to Interrogatory 1 shows, the persons with knowledge of Elisha's tortious and criminal actions against me include Elisha, myself, Ron Schneider, Mary Lou Schneider, Harvey Yoder, various employees of Greene

County Social Services, and various federal law enforcement agents. My response to Interrogatory 1 demonstrates how these persons gained their knowledge.

3.    Identify each document, writing, pictorial recording, and electronic recording which you contend supports each allegation contained in paragraph 4 of the Complaint.

**ANSWER:** As my response to Interrogatory 1 shows, Elisha has possession of one or more video recordings which she used to blackmail me. In addition, I have an audio recording or recordings of verbal abuse that Elisha directed at me.

4.    State each fact supporting each allegation contained in paragraph 5 of the Complaint.

**ANSWER:** Please see my response to Interrogatory 1.

5.    Identify each person with knowledge of each of the facts stated in your response to the immediately preceding Interrogatory, stating when each person obtained that knowledge, how each person obtained that knowledge of each such fact.

**ANSWER:** Please see my response to Interrogatory 2, save that it is unclear whether the various employees of Greene County Social Services and the various federal law enforcement agents have knowledge of the facts at issue.

6.    Identify each document, writing, pictorial recording, and electronic recording which you contend supports each allegation contained in paragraph 5 of the Complaint.

**ANSWER:** Please see my response to Interrogatory 3.

7.    State each fact supporting each allegation contained in paragraph 6 of the Complaint.

**ANSWER:** Please see my response to Interrogatory 1.

8.      Identify each person with knowledge of each of the facts stated in your response to the immediately preceding Interrogatory, stating when each person obtained that knowledge, how each person obtained that knowledge of each such fact.

**ANSWER:**  Please see my response to Interrogatory 2, save that it is unclear whether the various employees of Greene County Social Services and the various federal law enforcement agents have knowledge of the facts at issue.

9.      Identify each document, writing, pictorial recording, and electronic recording which you contend supports each allegation contained in paragraph 6 of the Complaint.

**ANSWER:** Please see my response to Interrogatory 3.

10.      State each fact supporting each allegation contained in paragraph 7 of the Complaint.

**ANSWER:** Please see my response to Interrogatory 1.

11.      Identify each person with knowledge of each of the facts stated in your response to the immediately preceding Interrogatory, stating when each person obtained that knowledge, how each person obtained that knowledge of each such fact.

**ANSWER:**  Please see my response to Interrogatory 2, save that it is unclear whether the various employees of Greene County Social Services and the various federal law enforcement agents have knowledge of the facts at issue.    Additional witnesses with regard to the events surrounding the foreclosure are James E. Treakle, Jr., Esquire, and his employees; M. Clifton McClure, Esquire, and his employees; and John C. Justice.  Mr. Treakle represented Elisha.  Mr. McClure was the trustee who sold

the house.   Prometheus Irrevocable Trust, acting through Mr. Justice, the trustee,

bought the house.

12.     Identify each document, writing, pictorial recording, and electronic

recording which you contend supports each allegation contained in paragraph 7 of the

Complaint.

**ANSWER:**  Please see my response to Interrogatory 3.  In addition, my counsel

has a copy of the following documents:  a letter from Mr. McClure notifying Elisha and

me of the impending foreclosure sale, a notice of trustee's sale, a statement authorizing

me to act as agent of Prometheus Irrevocable Trust ("PIT") at the foreclosure sale, a

memorandum of sale from Mr. McClure as trustee under the deed to trust to PIT, the

proposed deed from Mr. McClure as trustee under the deed of trust, the closing

statement, the trustee's affidavit, and a letter from Mr. Treakle.

13.     State each fact supporting each allegation contained in paragraph 9 of the

Complaint.

**ANSWER:**  Please see my response to Interrogatory 1.  As the facts plainly show,

Elisha gained the quitclaim deed from me by duress born of blackmail.  Therefore, the

deed is invalid, and I am entitled to a share of the net proceeds from the sale of the

house.

14.     Identify each person with knowledge of each of the facts stated in your

response to the immediately preceding Interrogatory, stating when each person

obtained that knowledge, how each person obtained that knowledge of each such fact.

**ANSWER:** Please see my response to Interrogatory 2, save that it is unclear whether the various employees of Greene County Social Services and the various federal law enforcement agents have knowledge of the facts at issue.

15.   Identify each document, writing, pictorial recording, and electronic recording which you contend supports each allegation contained in paragraph 9 of the Complaint.

**ANSWER:** Please see my responses to Interrogatories 2 and 12.

16.   State each fact supporting each allegation contained in paragraph 11 of the Complaint.

**ANSWER:** Please see my response to Interrogatory 1.

17.   Identify each person with knowledge of each of the facts stated in your response to the immediately preceding Interrogatory, stating when each person obtained that knowledge, how each person obtained that knowledge of each such fact.

**ANSWER:** Please see my response to Interrogatory 2, save that it is unclear whether the various employees of Greene County Social Services and the various federal law enforcement agents have knowledge of the facts at issue.

18.   Identify each document, writing, pictorial recording, and electronic recording which you contend supports each allegation contained in paragraph 11 of the Complaint.

**ANSWER:** None.

19.   List every item of Plaintiff's tangible personal property and its value left at "the Property," and state when it was left at the property.

**RESPONSE BY COUNSEL:**  The answer that follows is incomplete and will be supplemented following counsel's consultation with Mr. Strom.

**ANSWER:**

Property Of Kevin Strom:  Laptop computer delivered by Elisha to federal agents, various items of artwork, property of the estate of R.P. Oliver, numerous other items of valuable property.

Property Of Oskar Strom:  Please see my counsel's response to Request for Production of Documents 2.

Property Of Klara Strom:  Please see my counsel's response to Request for Production of Documents 2.

20.    State your present residence address and telephone number, and the name and address and phone number of your present employer.

**ANSWER:**  Kevin Alfred Strom, #388535, ACRJ, 160 Peregory Lane, Charlottesville, Virginia, 22902.  I am currently unemployed.

21.    Please identify each person whom you expect to call as an expert witness at trial, stating the subject matter on which each expert is expected to testify, the substance of the facts and opinions to which each expert is expected to testify, and providing a summary of the grounds for each opinion.

**RESPONSE BY COUNSEL:**  Mr. Strom has not yet identified any expert witnesses who meet the criteria that this interrogatory describes.  He will supplement this response as appropriate.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.      All documents, pictorial recordings, and electronic recordings identified in your response to the Interrogatories served contemporaneously herewith.

**ANSWER:**  Please see the documents attached as Exhibit A.  Given Mr. Strom's incarceration, he currently lacks possession of the audio recording or recordings of Ms. Strom's verbal abuse.  He is making efforts to obtain a copy of the recording(s) and will supplement this response as appropriate.   Ms. Strom possesses the videotape recordings with which she blackmailed Mr. Strom.

2.      All documents which you contend support the allegations contained in the Complaint filed herein.

**ANSWER:**  Please see the documents attached as Exhibit B.

3.      For every expert witness you expect to call at trial, please provide copies of all documents which the expert reviewed in the course of formulating the expert's opinions, all documents upon which the expert is relying in support of the expert's opinions, all reports prepared by the expert relating to the subject matter of the instant litigation, and all resumes or curricula vitae which the expert prepared or maintained within the last five years.

**ANSWER:**  Please see Mr. Strom's response to Interrogatory 21.

4.      All documents not produced in response the foregoing paragraphs and relied upon by you in any way in support of your claims against Defendant.

**ANSWER:**  None.

5.      All documents which you used or referred to in answering the foregoing Interrogatories.

**OBJECTION:**  Counsel for Mr. Strom possesses an undated narrative statement by Mr. Strom to counsel that counsel requested from Mr. Strom, a handwritten letter from Mr. Strom to counsel dated February 14, 2007, and a handwritten letter from Mr. Strom to counsel dated March 4, 2007.  The attorney-client privilege and/or the work-product doctrine protect all of these documents from disclosure.

**ANSWER:**  Other than the documents described in the objection, Mr. Strom has no documents that are responsive to this request.

RESPECTFULLY SUBMITTED this 27th day of April, 2007.

KEVIN A. STROM

By _____
                    Counsel

Francis L. Buck, Esquire, VSB No. 12361
Bradford M. Young, Esquire, VSB No. 31623
BUCK, TOSCANO & TERESKERZ, LTD.
211 East High Street
Charlottesville, Virginia  22902
Phone:  (434) 977-7977
Fax:  (434) 977-4847
Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2007, I hand-delivered this document to George H. Dygert, Esquire, by delivering it to either Mr. Dygert or the person in charge of reception at Mr. Dygert's office at 675 Peter Jefferson Parkway, Suite 190, Charlottesville, Virginia, 22911.